IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ALONZO ODOM,**

        Plaintiff,                                               **Case No. 6:19-cv-00832-MC**

        v.                                                 **OPINION AND ORDER**

**DAN RUSS**,

        Defendant.

_____

**MCSHANE, District Judge**:

      Plaintiff Alonzo Odom, a person in the custody of the Oregon Department of Corrections ("ODOC"), brings this action under 42 U.S.C. § 1983 and 28 U.S.C. § 1367. He alleges that Defendant Dan Russ violated his rights under the Eighth and Fourteenth Amendment, intentionally subjected him to emotional distress, and negligently denied his immediate access to the infirmary following an injury. Defendant moves for summary judgment on all claims. Def.'s Mot. Summ. J., ECF No. 69 ("Def.'s Mot."). Because the Court finds a genuine issue of material fact exists solely in the context of Plaintiff's Fourteenth Amendment claim, Defendant's Motion for Summary Judgment (ECF No. 69) is DENIED in part and GRANTED in part.

## **BACKGROUND**[1]

Plaintiff is an African American person in the custody of the ODOC. Pl.'s Compl. ¶ 2, 5, ECF No. 2. On August 4, 2017, Plaintiff was injured when a cell door "slammed on [P]laintiff's hand, back, and leg." Pl.'s Compl. ¶ 4. Plaintiff immediately approached Defendant, a Housing

---

[1] The Court views the facts in the light most favorable to Plaintiff, the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006).

1 – Opinion and Order

Unit Sergeant for ODOC, about his injuries, "complained about feeling pain," and requested a pass to the infirmary. *Id.* Defendant instead responded, "[y]ou look alright to me send a kyte." *Id.* Approximately twenty-five minutes prior to Plaintiff's request, Defendant provided a white inmate who was "not feeling well" a pass to the infirmary. *Id.*

Under ODOC policy, inmates are not free to enter the infirmary for unscheduled visits "except for cases of emergency." Russ Decl. ¶ 6, ECF No. 70. An inmate must request permission from a housing unit sergeant to make an unscheduled trip. *Id.* ¶ 9. If an inmate's request to visit the infirmary is denied, the inmate "may submit a medical request via [an] inmate communication form ("kyte") requesting sick call—*i.e.*, an infirmary trip that will be scheduled at the earliest opportunity." *Id.* ¶ 10. ODOC does not have written protocols for granting unscheduled trips to the infirmary, but Defendant claims the standard procedure is for a housing unit sergeant to ask the inmate to describe or show their injury and the sergeant will assess the urgency of the situation in light of concerns for facility security.[2] *Id.* ¶¶ 8–9.

Three days after sustaining his injuries, Plaintiff submitted a medical request via kyte. Pl.'s Compl. 12.  Plaintiff's kyte stated he was "experienc[ing] some soreness, however, nothing life threatening," and asked to be "schedule[d] for a check-up." *Id.* In October of 2017, Plaintiff submitted a kyte to medical staff stating his right hand had not improved. *Id.* at 13. That same month, Plaintiff's hand was x-rayed, showing no identifiable injury at the site of Plaintiff's pain. *Id.* at 14, 23. From January to April of 2018, Plaintiff requested and received x-rays of his arm, back, neck, and leg. *Id.* at 16–20, 24–32. Of these x-rays, one identified "a small <u>possible</u> chip fracture" in Plaintiff's elbow that was later described as "barely perceptible," but no other injuries associated with the August 2017 incident were identified. *Id.* at 24, 32.

---

[2] Defendant provides several reasons for limiting unscheduled visits to the infirmary, such as protecting inmates in the infirmary, maintaining a safe ratio of staff to inmates, and protecting ODOC medical staff. *Id.* ¶ 7.

2 – Opinion and Order

**STANDARDS**

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

**I.    Plaintiff's State Law Claims**

Plaintiff raises state tort law claims against Defendant for intentional infliction of emotional distress and negligence. Pl.'s Compl. 2–3. Under ORS 30.265(3) and ORS 30.271, individually named defendants must be dismissed from state law claims and the state of Oregon substituted in their place if the alleged damages do not exceed $4,000,000. A state is immune from suits brought in federal court by its own citizens, as well as citizens of other states, unless the state consents to be sued. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Under the Oregon Tort Claims Act, the state of Oregon has consented to be sued in Oregon state courts for torts committed by its employees, officers, or agents while acting within the course and scope of their duties, but it has not consented to be sued for those torts in federal

3 – Opinion and Order

court. *Blair v. Toran*, No. CV-99-956, 1999 WL 1270802, at *23 (D. Or. Dec. 2, 1999), *aff'd*, 12 Fed. App'x. 604 (9th Cir. 2001).

Plaintiff alleges damages of $250,000; therefore, the state of Oregon must be substituted for Defendant. Following this substitution, the state of Oregon must be dismissed as a defendant because the state has raised a valid sovereign immunity defense. *Cf. Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1021–22 (9th Cir. 2010) (concluding that defendants waived sovereign immunity defense when they failed to raise it during litigation). Moreover, Plaintiff did not respond to Defendant's summary judgment motion on these claims. Accordingly, Plaintiff's claims of intentional infliction of emotional distress and negligence are dismissed without prejudice.

## II.     Plaintiff's Eighth Amendment Claim

Plaintiff alleges Defendant violated his rights under the Eighth Amendment by providing inadequate medical treatment. Pl.'s Compl. ¶ 4. To sustain an Eighth Amendment claim based on prison medical treatment, Plaintiff must establish the existence of "a serious medical need" and show that the "defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner has a serious medical need if "failure to treat [the] prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (citation omitted). Deliberate indifference requires both an objective risk of harm and a subjective awareness of that harm. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiff has failed to establish the existence of a "serious medical need" or that Defendant acted with deliberate indifference. Plaintiff "complained about feeling pain"

4 – Opinion and Order

immediately after the cell door closed on him, and acknowledged having "some soreness" three days later. Pl.'s Compl. ¶ 4, 12. However, neither of these statements support a conclusion that failure to immediately treat Plaintiff's injuries could have resulted in further significant injury or the unnecessary infliction of pain. Plaintiff's own three-day delay in filing a kyte requesting a medical appointment further illustrates this point. Additionally, Plaintiff provided records of his medical visits that show no further injury stemming from the August 2017 incident. *Id.* at 23–32.

Plaintiff has also failed to establish that Defendant acted with the knowledge or intent necessary for deliberate indifference. Plaintiff's statement that he was "feeling pain" would not provide sufficient notice to Defendant that there was an objective risk of harm. Defendant also offers uncontested testimony that immediately following the accident, Plaintiff showed Defendant he could move his hand with a full range of motion and only asked about seeing a nurse "just to be sure." Russ Decl. ¶¶ 12–13. As Plaintiff fails to rebut this evidence, no jury could conclude Defendant had a subjective intent to needlessly cause Plaintiff additional pain. At best, a jury could conclude Defendant negligently caused Plaintiff some additional pain. However, a negligent failure to provide appropriate medical care does not rise to the level required for deliberate indifference. *Jett*, 439 F.3d at 1096 (citations omitted).

No genuine issue of material fact exists for Plaintiff's Eighth Amendment claim; therefore, summary judgment is granted.

### III.   Plaintiff's Fourteenth Amendment Claim

Plaintiff alleges Defendant violated his rights under the Equal Protection Clause of the Fourteenth Amendment by denying Plaintiff access to the infirmary because of his race. Pl.'s Compl. ¶ 4, 5. To state a § 1983 claim for violation of the Equal Protection Clause, "a plaintiff must show that the defendant[] acted with an intent or purpose to discriminate against the

5 – Opinion and Order

plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). "'Discriminatory purpose' . . . implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Navarro v. Block*, 72 F.3d 712, 716 n.5 (9th Cir. 1996) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Discriminatory purpose may be proven by direct or indirect evidence. *Lowe v. City of Monrovia*, 775 F.2d 998, 1011 (9th Cir. 1985); *see also Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

Here, Plaintiff is a member of a protected class due to his race and has "produce[d] evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [Defendant's actions were] racially motivated." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation omitted). Plaintiff alleges that Defendant provided a white inmate a pass to the infirmary for "not feeling well" approximately twenty-five minutes prior to Plaintiff's request. Pl.'s Compl. ¶ 4. Defendant does not contest these allegations; instead, Defendant contends that his refusal to allow Plaintiff access to the infirmary was based on ODOC policy and a lack of apparent necessity. Def.'s Mot. 8 (citing Russ Decl. ¶ 7). Specifically, Defendant states he did not allow Plaintiff an unscheduled trip to the infirmary because Plaintiff "did not have the type of urgent medical needs required for such a trip." Russ Decl. ¶ 14. Plaintiff responds that, even if his own injuries were not visible to Defendant, neither were the injuries of the white inmate, so a lack of visible injuries alone cannot explain Defendant's disparate treatment of the two inmates. Pl.'s Decl. Opp'n Def.'s Mot. Summ. J. ¶ 2, ECF No. 88-1. Defendant's contentions, while relevant to the issue of Defendant's intent, are insufficient to conclude that no genuine issue of material fact exists for this issue. Viewing the evidence in the

light most favorable to Plaintiff, Defendant sent a white inmate who "said that he was not feeling well" to the infirmary while denying a black inmate who "complained about feeling pain" access to the infirmary. Pl.'s Compl. ¶ 4.

As noted, Defendant has provided several seemingly legitimate, non-discriminatory reasons for limiting the number of unscheduled infirmary visits, including protection of ODOC inmates and medical staff. Russ Decl. ¶ 7. However, Defendant has failed to provide pertinent information such as the ratio of inmates to staff in the infirmary and how this differed when the white inmate was allowed access almost immediately before Plaintiff was denied access. While general safety concerns could conceivably justify Defendant's different treatment of similarly situated inmates, a genuine issue of material fact exists as to whether specific facts known to Defendant at the time justified his actions based on legitimate safety concerns.[3]

Because Defendant has failed to prove that no genuine issue of material fact exists, summary judgment is denied for Plaintiff's Fourteenth Amendment claim.

## IV. Qualified Immunity

Qualified immunity can shield a defendant from liability for an alleged constitutional violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity is applicable, the court must consider: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, show defendant's conduct violated a constitutional right; and (2) whether that constitutional right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201

---

[3] The Court must point out that Defendant provided literally no evidence on this matter. There is no evidence indicating the size of the infirmary. There is no evidence indicating how many prison staff were in the infirmary at the time in question. There is no evidence indicating how many inmates were in the infirmary at the time in question. Without any such evidence, the Court is unable to make a finding that Defendant in fact had legitimate safety concerns justifying different treatment of inmates, on this limited record, based solely on race. Again, viewed in the light most favorable to Plaintiff, Defendant allowed a white inmate who was not feeling well to visit the infirmary and denied a black inmate who was not feeling well access to the infirmary. On this record, neither inmate had "the type of urgent medical needs required for such a trip." Russ Decl. ¶ 14. In other words, a jury could conclude that Defendant treated Plaintiff differently solely because of the color of his skin.

7 – Opinion and Order

(2001). The Supreme Court has impressed upon courts not to be overly generalized or excessively specific in defining what it means for a right to be "clearly established." *See District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

The Court need not address qualified immunity for claims dismissed on other grounds in this opinion. As addressed above, the record could support a finding that Defendant's conduct violated Plaintiff's Fourteenth Amendment right to equal protection of law; thus, the pertinent question is whether that right was clearly established. To be clearly established, the unlawfulness of the alleged conduct must be apparent under preexisting law such that a defendant had "fair warning" that the conduct was unconstitutional. *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002); *see also Hope v. Pelzer*, 536 U.S. 730 (2002). "The fundamental principle that prisoners are protected from race discrimination is longstanding" and the Court is satisfied that any reasonable officer in Defendant's position would have fair warning that invidious discrimination of inmates based on race violates the Constitution. *Harrington v. Scribner*, 785 F.3d 1299, 1305 (9th Cir. 2015). The Court concludes that qualified immunity is not applicable to Defendant for Plaintiff's Fourteenth Amendment claim.

## CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 69) is DENIED in part and GRANTED in part.

IT IS SO ORDERED.

DATED this 10th day of March 2022.

                                                                                            _____/s/ Michael J. McShane_____
                                                                                                 Michael J. McShane
                                                                                                 United States District Judge